UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

ANGELA TANG,                                    Case No.: 01-17-0004-0947

                Petitioner,

                                                PETITION TO STAY OR VACATE
      -against-                          <u>DEMAND FOR ARBITRATION</u>


WINSTON ENTERTAINMENT INC.,


                Respondent.

------------------------------------------------------------------X

Angela Tang, by and through undersigned counsel, hereby petitions to stay or vacate the demand for arbitration served by Winston Entertainment Inc., and asserts as follows:

<u>The Parties</u>

1.      Petitioner Angela Tang ("Petitioner" or "Tang") is a citizen of the People's Republic of China who resides at 2155 Green Castle Way, Oxnard, California 93035.

2.      Respondent Winston Entertainment Inc. ("Respondent" or "Winston") is a corporation of the State of New York, with its principal place of business in New York County.

<u>Jurisdiction and Venue</u>

3.      There is jurisdiction under 28 U.S.C. 1332(a), as the parties are diverse in citizenship and the amount in controversy is in excess of $75,000.

4.      Jurisdiction is also proper under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., as this matter involves interstate commerce.

5.     Venue is proper in this District and in this Courthouse, pursuant to 28 U.S.C. § 1391(b)(1) and (d).

<u>First Count of Petition</u>

6.     Petitioner is the Chief Executive Officer of Legend River Entertainment Co. Ltd. ("Legend River"), a corporation duly licensed in the People's Republic of China.

7.     On or about November 12, 2015, Winston and Legend River defined in the agreement as the "Company" entered into a Short Form Consulting and Introduction Agreement (the "November 12, 2015 Agreement") in which Winston agreed to "advise Angela Tang / Legend River Entertainment CO. LTD on negotiating and finalizing Transactions with Metallica and other Artists for Changjiang International Music Festival and touring of China in 2016. Services include making Introductions and representing Company... ." A copy of the November 12, 2015 Agreement is annexed hereto as Exhibit A. (Ex. A, Exhibit "A" p. 1, ¶ 3).

8.     Winston drafted the November 12, 2015 Agreement which Tang signed once in a corporate capacity only.

9.     Tang was not an individual signatory on the November 12, 2015 Agreement and signed only in a representative capacity for Legend River, as follows:

| COMPANY | CONSULTANT |
|---|---|
| Name: | Name: |
| Angela Tang | Steven Ship |
| BY _Angela Tang_ | BY |
| TITLE: CEO | TITLE: CEO |
| Date_____11/12/15_____ | Date_11/12/15 |

10.     The November 12, 2015 Agreement contained an Arbitration Clause providing for arbitration before the American Arbitration Association ("AAA") as follows: "Any controversy or claim arising under or in relation to this Agreement or the relationship between Company and Consultant, shall be subject to arbitration in New York City before a single arbitrator under the commercial rules of the [AAA], and any award may be confirmed in the state and federal courts of the State of New York, County of New York. The parties irrevocably agree to personal jurisdiction and venue in the State of New York, County of New York for such purpose." (Ex. A, p. 2, ¶ 12).

11.     The clauses of the November 12, 2015 Agreement clearly demonstrate that it created a corporate obligation between Legend River and Winston. For instance, Clause One identifies the services to be provided to the Company, in this case Legend River, as follows:

> "Company is hereby engaging and retaining Consultant, as an independent contractor (and not as an agent, representative, or employee), to render and perform the services that are described in Exhibit "A" and made a part hereof and to render and perform the services that are described in any other proposals/quotations/work orders that Company may furnish to Consultant from time to time (the "Services") and Consultant hereby accepts such engagement and retention."

(Ex. A, p. 1, ¶ 1)

12.     Similarly, the services to be performed are to be completed in a satisfactory manner for the benefit of Legend River as provided in Clause Two:

> "The Services shall be performed and completed by Consultant in a manner reasonably satisfactory to Company, in all respects."

(Ex. A, p. 1, ¶ 2)

13.     Compensation is governed by Clause Three of the November 12, 2015 Agreement

and requires payment by Legend River as follows:

> "As compensation for the Services to be rendered by Consultant
> hereunder, Company shall pay Consultant the fees set forth in
> accordance with the terms and conditions of Exhibit "A.""

(Ex. A, p. 1, ¶ 3)

14.     Any changes to the November 12, 2015 Agreement were required to be made in a

writing signed by the parties pursuant to Clause Fourteen:

> "This Agreement may not be modified or amended except in a
> writing, which has been signed by the parties hereto. This
> Agreement constitutes the entire agreement of the parties hereto."

(Ex. A, p. 3, ¶ 14)

15.     Clause Seventeen of the November 12, 2015 Agreement is also illustrative, in that

it attests to the authorization to sign the agreement by each of the company representatives.

> "Representation: The undersigned has been duly authorized to
> execute this agreement on behalf of Consultant on the one hand
> and the Company on the other, and has the full power and
> authority to execute and deliver this agreement."

(Ex. A, p. 3, ¶ 17)

16.     Additionally, Clause Two to Exhibit "A" of the November 12, 2015 Agreement

outlines the nature of Winston's connections and expertise in the entertainment industry, which

Legend River expected to call upon by executing the November 12, 2015 Agreement:

> "Project: Consultant has numerous relationships in the
> entertainment industry and can assist Company in making
> Introductions (as defined below) to acquire artists and
> entertainment properties and business development. Company
> desires to obtain touring rights for Metallica and other Artist and
> entertainment properties ("Transactions").

(Ex. A, Exhibit "A", p. 1 ¶ 2)

4

17.     Clause Three to Exhibit "A" of the November 12, 2015 Agreement describes the

nature of services Winston agreed to provide to Legend River in connection with Changjiang

International Music Festival:

> "Services /Description:
>
> Consultant will advise Angela Tang / Legend River Entertainment
> CO.LTD on negotiating and finalizing Transactions with Metallica
> and other Artists for Changjiang International Music Festival and
> touring of China in 2016. Services include making Introductions
> and representing Company with artist, managers, management
> companies, agents and agencies and entertainment properties and
> companies. Developing presentations, offers and strategies to
> secure Artists to perform at festival and tour China during the
> Term.
>
> Consultant agrees to provide the services hereunder in a timely,
> proficient, diligent, professional and conscientious manner, under
> the general direction and supervision of Company and will
> collaborate with and report to Angela Tang. Consultant will work
> with Company's attorney to complete Transactions, and Company
> will be responsible for fees for Company's attorney.
>
> It is understood that Consultant's services do not include touring
> with the groups or traveling for this project. If Company requests
> Consultant to travel additional fees will apply and be negotiated by
> the parties in advance of such travel."

(Ex. A, Exhibit "A", p. 1, ¶ 3)

18.     Clause Five to Exhibit "A" of the November 12, 2015 Agreement details the

consideration Winston would receive for its performance under the November 12, 2015

Agreement:

> "Consideration Fees: A total sum of $50,000 US dollars plus
> bonuses and additional fees as set forth herein, to be paid as
> follows. . . .
>
> In the event that Company enter into an agreement with a
> Introduction during the Term or within two (2) years thereafter,

5

Company shall pay Consultant the sum of five percent (5%) (Commission) of all gross amounts paid to artist or entertainment properties related to Transactions by Company or any of Company's affiliated entities under each subject agreement. Company shall render accounting and payment of such Commissions are due on signing of Artist agreements with subsequent payments due on the same schedule as payments made in Transactions.

Company shall maintain accurate books and pay Consultant on a timely basis according to this Agreement. Consultant shall have the reasonable right to review Company books and records to confirm the accuracy of the Commissions paid or being due to Consultant hereunder and receive copies of all contracts and correspondence surrounding the Transactions.

If Company or any affiliated entity of Company enters into a Transaction, they shall pay Commissions to Consultant derived under such Transaction and Introductions without any limitation of time including any and all extensions, additions, substitutions, renewals, replacements, modifications and amendments of each such Transactions, agreement, and Introduction.

Company agrees that it shall not in any way circumvent Consultant, either now or in the future and as long as this Agreement is in effect, whether directly or indirectly through third parties, by negotiating or entering into one or more agreement(s) with any persons or entities introduced by Consultant to Company.

(Ex. A, Exhibit "A", pp. 1-2, ¶ 5)

19.    All references to "Company" within the November 12, 2015 Agreement operate under the following definition: "... Legend River Entertainment Co. LTD / Angela Tang an individual with an office at 60543#Su Yuan, Zhongguancun South Street NO. 1, Haidan District, Beijing 100873 China ("Company")... ." This definition evidences a lack of personal liability as to Tang, as she was named in an official capacity on behalf of Legend River, and Legend River's business address is used. (Ex. A, p. 1).

6

20.     On or about November 25, 2015, Winston and Legend River entered into a Short Form National Tour Producer Agreement (the "November 25, 2015 Agreement") in which Winston agreed to "[c]onsult and advise Angela Tang and Company on all Project elements of the Show. Make Introductions (as defined below) to agents producers and venues to tour and book the Show in North America and around the world... . Consultant has numerous relationships in the entertainment industry and can assist Company in making Introductions (as defined below) and business development." A copy of the November 25, 2015 Agreement is annexed hereto as Exhibit B. (Ex. B, Exhibit "A", p. 1 ¶ 3).

21.     It is significant to note that all references to "Company" within the November 25, 2015 Agreement operate under the same definition as provided in paragraph 7 above, evidencing a lack of personal liability as to Tang, as she was named in an official capacity on behalf of Legend River. (Ex. B, p. 1).

22.     Winston drafted the November 25, 2015 Agreement which Tang signed once in a corporate capacity only.

23.     Tang was not an individual signatory on the November 25, 2015 Agreement and signed once only in a representative capacity for Legend River as follows:

| COMPANY | CONSULTANT |
|---|---|
| Name: | Name: |
| Angela Tang *Angela Tang* | Steven Ship |
| BY | BY |
| TITLE: CEO *12/5/* | TITLE: CEO |
| Date *5/15*  11/25/15 | Date_11/25/15 |

24.    The November 25, 2015 Agreement contained the same Arbitration Clause and Merger Clause as the November 12, 2015 Agreement, detailed in paragraphs 9 and 10 herein.

25.    Exhibit "A" to the November 25, 2015 Agreement also provided the terms of payment from Legend River to Winston, as follows:

> "Consideration Fees:
>
> Consultant will invoice Company in advance of each month for all fees for the preceding month.
>
> . . .
>
> In the event that Company enter into an agreement with a Introduction or referral by an Introduction during the Term or within two (2) years thereafter, Company shall pay Consultant the sum of five percent (5%) (Commission) of all gross amounts paid to the contact or the entertainment properties related to Transactions by Company or any of Company's affiliated entities under each subject agreement."

(Ex. B, Exhibit "A", pp. 1-2, ¶ 5)

26.    Disputes arose between Respondent, Tang, and Legend River.

27.    On or about June 30, 2017, Respondent filed a statement of claim ("Statement of Claim") before the AAA against Legend River and Tang demanding damages based on alleged breaches of contract in the amount of $238,005.78, costs and disbursements, and attorney's fees. A copy of the Statement of Claim is annexed hereto as Exhibit C.

28.    On or about October 2, 2017, Legend River and Tang filed a response to the statement of claim and counterclaims (the "Response"), in which they asserted, as a twenty-seventh affirmative defense, that "Winston's claims are barred in whole or in part based on lack of privity with one more of the Respondents." A copy of the Response is annexed hereto as Exhibit D. (Ex. D, p. 6, ¶ 6).

29.     The Response also asserted a counterclaim for Breach of Contract due to Winston's failure to "perform the services it was obligated to perform under the Agreements, which caused delays, financial damages and negatively impacted Legend River's events," (Ex. D, pp. 7-8, ¶ 5), and demanded damages in an amount to be determined at trial but no less than $75,000, plus interest, costs and attorneys' fees. (Ex. D, p. 8, ¶ 9).

30.     On or about March 13, 2018, Mr. Adelman, counsel for Legend River and Tang, wrote a letter to the Alida Camp, Esq., the Arbitrator, requesting to schedule a motion to dismiss. A copy of the March 13, 2018, letter is annexed hereto as Exhibit E.

31.     On or about March 19, 2018, counsel for Winston submitted a letter response to the Arbitrator, objecting to Legend River and Tang's proposed motion to dismiss. A copy of the March 19, 2018, letter is annexed hereto as Exhibit F.

32.     At a status conference with the Arbitrator, where this issue was discussed, the Arbitrator directed Legend River and Tang to file a motion to dismiss the claims against Tang.

33.     On or about March 21, 2018, Legend River and Tang filed a Motion to Dismiss the Claims against Tang in the arbitration, objecting to the Demand on the basis that the AAA lacks subject matter jurisdiction over Tang, as she is a non-signatory to the November 12, 2015 Agreement and the November 25, 2015 Agreement (collectively, the "Agreements"). A copy of Respondents' Motion to Dismiss is annexed hereto as Exhibit G.

34.     By decision dated April 19, 2017,[1] the AAA denied Legend River and Tang's Motion to Dismiss. A copy of the decision is annexed hereto as Exhibit H.

35.     On or about May 4, 2018, Tang retained new counsel in the arbitration.

---

[1] The decision is incorrectly dated as April 19, 2017, rather than April 19, 2018.

36.     Upon review of the file by new counsel, it became apparent that predecessor counsel had committed law office failure in failing to expeditiously move to vacate the arbitration in Federal Court. Instead, predecessor counsel made a motion to dismiss the arbitration as against Tang to the arbitrator.

37.     As there is no subject matter jurisdiction over Petitioner, and as Petitioner has objected to the AAA's exercise of jurisdiction over her since the inception of the arbitration, Petitioner hereby moves to Vacate the Demand for Arbitration.

38.     The FAA governs this action because it involves interstate commerce, as implicated by the underlying Agreements between the diverse parties. See 9 U.S.C. § 1 et seq. ("'commerce', as herein defined, means commerce among the several States or with foreign nations"); Barbier v. Shearson Lehman Hutton Inc., 948 F.2d 117, 120 (2d Cir. 1991) ("The FAA applies when there is federal subject matter jurisdiction, *i.e.,* diversity jurisdiction, see Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 942 n. 32, 74 L.Ed.2d 765 (1983), and when the contract calling for arbitration 'evidenc[es] a transaction involving interstate commerce.' 9 U.S.C. § 2.").

39.     "It is well settled in both commercial and labor cases that whether parties have agreed to submit a particular dispute to arbitration is typically an issue for judicial determination." Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287 (2010) (internal quotations omitted). The issue of whether the parties agreed to arbitrate a matter is to be decided by the courts and not the arbitrator, "[u]nless the parties clearly and unmistakably provide otherwise." AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1983).

40.     The Second Circuit has specifically stated, "[s]ince interpretation of the terms of a

contract normally raises a question of law ... the issue of whether the agreement could be construed as providing for arbitration of a dispute must in the first instance be decided by the court rather than by the arbitrators." Woodcrest Nursing Home v. Local 144, Hotel Hosp., Nursing Home and allied Services Union, 788 F.2d 894, 897 (2d Cir. 1986); see, also, Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84, 123 S. Ct. 588, 592, 154 L.Ed.2d 491 (2002) ("[A] disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy is for the court.").

41.     Furthermore, "[F]ederal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties; instead ordinary contract principles determine who is bound." Datatreasury Corp. v. Wells Fargo & Co., 522 F.3d 1368, 1372 (Fed. Cir. 2008) (citing Fleetwood Enters., Inc. v. Gaskamp, 280 F.3d 1069, 1073 (5th Cir. 2002).

42.     As the AAA lacks subject matter jurisdiction over Tang, since she signed the Agreements only in her official capacity on behalf of Legend River, and since the question of arbitrability is an issue to be decided by this Court, Petitioner respectfully moves for an Order Staying and/or Vacating the Demand for Arbitration against Petitioner.

WHEREFORE, Petitioner Angela Tang, respectfully requests Judgment as follows:

(i)     Vacating and/or Staying the Demand for Arbitration served by Respondent against Petitioner;

(ii)    Granting to Petition her attorney's fees and costs; and

(iii)    For such further and different relief that this Court finds just and equitable.

Dated: Brooklyn, New York
   June 26, 2018

          RODRIGUEZ-MCCLOSKEY, PLLC

          */s/ Yenisey Rodriguez-McCloskey*
          Yenisey Rodriguez-McCloskey, Esq.
          300 Cadman Plaza W., Fl. 12
          Brooklyn, New York 11201
          Telephone: (347) 689-7625
          Facsimile:  (347) 402-1033
          yenisey@rodriguezmccloskey.com

          *Attorneys for Petitioner*